**AMY E. POTTER**, OSB No. 231794
amy@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**MICHEAL BERTHOLF**, OSB No. 044642
michaelbertholaw@gmail.com
Law Offices of Michael P Bertholf LLLC
108 Mistletoe St
Medford, OR   97501
Telephone: (541) 245-9167
Facsimile: (541) 773-6790

*Attorneys for Defendant Sakima Zuberi*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff.<br><br>v.<br><br>NEGASI ZUBERI, aka JUSTIN JOSHUA HYCHE, aka SAKIMA ZUBERI,<br><br>Defendant. | Case No. 1:23-cr-00254-MC<br><br>**MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE** |

  Mr. Zuberi is charged with kidnapping AV1. This case hinges on the credibility of AV1. From the beginning, law enforcement has known that this case would come down to whether a jury believed AV1's allegations. And to that end, it sought, with multiple search warrants, evidence that would support AV1's story. What it did not do, though, is preserve or carefully document the key piece of evidence that casts doubt on AV1's story—the cinderblock structure

in the garage. Absent a chance to examine that room or at least a detailed video documenting it and its removal, Mr. Zuberi is unable to adequately challenge AV1's statements about being trapped in the room and how she escaped. This warrants dismissal of the indictment.

## BACKGROUD

The government has alleged that Mr. Zuberi kidnapped AV1, transported her to his home in Klamath Falls, and locked her in a cinderblock structure that was in the garage. It appears the government's theory is that Mr. Zuberi built the structure for precisely that purpose.

In police reports, AV1 describes the structure in detail. She says she was placed in a very small room with Styrofoam and that she banged on the door repeatedly. When no one came to release her, she said she punched and beat on the door until she broke the screen. She then broke through the second door and the Styrofoam, and then she squeezed through the slot. She said this caused "significant" injuries to her knuckles.

After a search warrant for the home was obtained, the Klamath Falls Police Department found "a free standing concrete block structure built on the concrete floor of the two car garage." There were two doors: a metal door that was mounted to open inward and an outer, wood door that opened outward. There was a ceiling that was made of 2"x4" boards with plywood particle board. There was a mattress pad on top of the plywood roof.   Law enforcement seized the metal door and a chair inside the structure, but no other parts of the structure.

Photos taken at the scene revealed that the cinderblocks were stacked directly on top of each other and not secured with any grout or other material. There is also body camera video of law enforcement looking at and talking about the structure. They describe the structure as a significant investment. And they acknowledge that there is no mortar holding it together, just insulation. One of the investigating officers observed that, based on his limited experience

building sound studios, the Styrofoam was consistent with sound proofing. This is consistent with AW1's statement that the room was built as a music studio.

After conducting the initial search and reviewing the crime scene photographs, law enforcement determined that a thorough search of the garage had not been completed. The FBI, which was now involved in the investigation, obtained a second warrant. They conducted the second search on the morning of July 19, 2023. During the search, the FBI measured the studio and obtained the dimensions. The FBI also checked it for potential biological stains. One portion of drywall that appeared to have a stain was removed and seized. None of this was videotaped. Nor was any effort made to determine how the structure was constructed or to seize any other evidence from the structure.

Also, on July 19, 2023, the FBI interviewed the homeowners of the property. The owners asked if they could tear down the structure in the garage; the FBI advised them that the FBI was done with its search and the owners would need to follow state law regarding when they could take back the property. The next day the property owner and his son tore down the studio. It took approximately five hours. They took a couple of pictures, but there is no video documenting how it was dismantled. In a media report, one of the owners of the home reported that the structure was unsafe because the cinder blocks were not staggered to give it strength.

Because no effort was made to maintain or otherwise document the construction of the cell, Mr. Zuberi now moves to dismiss.

## ARGUMENT

When evidence is lost or destroyed, it can implicate a defendant's right to a fair trial; the government is obligated to preserve evidence that "might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). "[T]he government

violates the defendant's right to due process if the unavailable evidence possessed 'exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (quoting *Trombetta*, 467 U.S. at 489). If a defendant's constitutional rights are violated in this manner, it may result in dismissal of the indictment. *See, e.g., United States v. Zaragoza-Moreira*, 780 F.3d 971, 982 (9th Cir. 2015).

To prevail in a motion to dismiss for destruction of evidence, a defendant must establish two things. First, the defendant must demonstrate that the government "acted in bad faith in failing to preserve the potentially useful evidence." *Cooper*, 983 F.2d at 931 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). Bad faith "turns on government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *Zaragoza-Moreira*, 780 F.3d at 977 (citations omitted); *see also United States v. Leal–Del Carmen*, 697 F.3d 964, 970 (9th Cir. 2012). Second, the missing evidence must be "'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (*quoting Trombetta*, 467 U.S. at 489).

   1. ***Dismissal of the Superseding Indictment is Warranted***

Here, law enforcement was on notice from the outset that AV1's credibility would be at the core of the case. Much of its efforts in investigating this case went to finding evidence supporting her claims. The search warrants themselves detail searches for items that support AV1's version of events. And to the extent that anything from the structure was critical to

supporting that theory, law enforcement collected that evidence. Law enforcement, during the execution of two separate warrants on the home, removed and seized the doors AV1 said she crawled through, the chair that was inside, and a piece of drywall that appeared to contain body fluids.

Law enforcement also searched statements made by Mr. Zuberi about building a potential studio and the defense believes they will rely on those to argue that Mr. Zuberi intended and did build a secure structure. But no effort was made to verify that the structure that existed actually was secure. Law enforcement took some pictures and there is body camera video that exists from the search, but no effort was made to document how it was constructed or how secure it was. Conducting that examination would have revealed it was not what law enforcement believed it to be.

Law enforcement clearly knew that this structure would be key to any criminal case. It examined it twice and made sure it seized all evidence supporting its theory of the case. But law enforcement failed to make any effort to preserve critical evidence demonstrating how the structure was constructed, which was clearly exculpatory.

Of course, it wasn't just law enforcement that understood the importance of the structure. Understanding that the structure was part of the investigation, the homeowners sought permission from the FBI before removing it. And they did take pictures of dismantling it. Unfortunately, those few pictures are inadequate. It was law enforcement that should have been documenting this.

Law enforcement's failure to either maintain the structure or more thoroughly document how it was constructed and eventually dismantled was bad faith. And now Mr. Zuberi is left with

only the few pictures and body camera videos of the structure to attempt to challenge the witness against him. This is not sufficient. Dismissal is warranted.

### 2. *In the Alternative, an Adverse Instruction Should Be Given*

In the alternative, if this Court decides dismissal is not appropriate, the defense requests either that the government be prevented from talking about the structure at all or that this this Court give a jury instruction regarding lost or destroyed evidence.[1] When evidence is lost or destroyed, the "'principal concern is to provide the accused an opportunity to produce and examine all relevant evidence, to insure a fair trial.'" *Sivilla*, 714 F.3d at 1173 (*citing United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir.1979) (Kennedy, J., concurring)). This requires a balancing of "'the quality of the Government's conduct'" against 'the degree of prejudice to the accused,' where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice." *Id.* (citation omitted). Notably, to obtain a remedial instruction, no showing of bad faith is required. *Id.*

The question of the government's conduct turns on whether the evidence was in the government's control, the government's acted in disregard of the accused's interests, and whether it was negligent. *Id.* Here, the government searched the home twice but did not take any video or conduct any evidence collection that would allow the defense to verify AV1's story. Then, when asked by the homeowners if the structure could be removed, the FBI agreed it could.

---

[1] The Ninth Circuit model instruction reads as follows:

> If you find that the government intentionally [destroyed][failed to preserve] [insert description of evidence] that the government knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the government.

Ninth Cir. Model Crim. Ins. 3.19.

MOTION TO DISMISS FOR DESTRUCTION OF EVDIENCE                    Page **6** of **7**

But no effort was made to document the removal or maintain any other portions of the structure. The government had multiple opportunities to maintain the structure or at a minimum more thoroughly document how it was constructed. It did not do so.

Mr. Zuberi has been prejudiced by this; the jury will see only what the government decided it would document. The minimal photographs and videos taken by the government are inadequate to allow Mr. Zuberi to rebut the government's characterization of the structure. This is precisely the type of case where an instruction or some other limits on the government's use of the evidence is appropriate. *Sivilla*, 714 F.3d at 1174.

## CONCLUSION

Mr. Zuberi requests that this Court dismiss the indictment because the destruction of the garage structure violated his due process rights. In the alternative, he requests an adverse jury instruction regarding the destruction of evidence.

DATED this 22nd day of April 2024.

Respectfully submitted,

ANGELI LAW GROUP LLC

*s/ Amy E. Potter*
Amy E. Potter
amy@angelilaw.com
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Attorney for Defendant Sakima Zuberi*