**AMY E. POTTER**, OSB No. 231794
amy@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**MICHEAL BERTHOLF**, OSB No. 044642
michaelbertholaw@gmail.com
Law Offices of Michael P Bertholf LLLC
108 Mistletoe St
Medford, OR 97501
Telephone: (541) 245-9167
Facsimile: (541) 773-6790

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-cr-00254-MC |
| Plaintiff. | |
| v. | **MOTION TO SUPRESS EVIDENCE FROM THE NISSAN ALTIMA** |
| NEGASI ZUBERI, aka JUSTIN JOSHUA HYCHE, aka SAKIMA ZUBERI, | |
| Defendant. | |

The government sought and received a search warrant for a Nissan Altima that was used

by AW1. In the warrant, the affiant concludes, without any factual basis, that the Altima might

contain evidence that law enforcement had not yet been able to locate along with DNA from the

victims. These unsupported conclusions are not sufficient; the warrant lacks probable cause. All evidence from the Altima and any searches that followed from it must be suppressed.

## BACKGROUND

There were multiple warrants in this case. This motion concerns the warrant for the Nissan Altima that was used by AW1. *See* Affidavit for the Search Warrant for the Nissan Altima, Defense Exhibit 3.[1] Law enforcement sought to search the vehicle for evidence of kidnapping and obstruction of justice.

But this was not the vehicle that was used in either of the alleged kidnappings. That vehicle was the Honda Pilot that was seized and searched in Reno. Both AV1 and AV2 reported that they were in the Pilot; neither said they were in the Altima. Indeed, AV1 reported to police that the Altima was in the driveway when she fled.

Law enforcement was well aware that AW1 was the primary driver and user of the Altima. After law enforcement secured their home, AW1 drove to the home not once but twice in the Altima. And after learning that a neighbor had rented her a hotel room, law enforcement went to the hotel and confirmed the Altima was parked at the hotel.

When law enforcement began looking for Mr. Zuberi, they began looking for both the Pilot and the Altima. Detective Jesse Snyder was tasked with trying to locate the Altima, which the FBI and Klamath County Major Crime team had described to him as being in AW1's possession. Detective Snyder was told that Mr. Zuberi's phone had pinged near a gas station in

---

[1] All of the affidavits that the defense relies on for these pretrial motions are filed as a single set of exhibits linked to the motion for a *Franks* hearing.

Merrill, Oregon; Detective Snyder went to the gas station and found the Altima at around 6:45pm. By 7:30pm, the Altima had been towed to the Klamath Falls Police Department.

Detective Snyder also discovered that there was surveillance video of the vehicle. In the video, the Altima and the Honda Pilot arrive in the parking lot and Mr. Zuberi and AW1 are seen. The Altima is parked in the lot at around 10:00am and Mr. Zuberi and AW1 depart in the Pilot. The video also shows AW1 removing things from the vehicle and throwing them away.

Despite this, the FBI obtained a warrant for the Altima, claiming that evidence of the alleged kidnappings and possible obstruction could be inside. In terms of the potential evidence, the warrant claims that Mr. Zuberi was in Merrill for 45 minutes and could have transferred items to the vehicle but omits evidence that AW1 was removing items. Ex. 3 at ¶ 29. The warrant also states that evidence of AW1's attempts to assist Mr. Zuberi may be in the Altima, but it offers no specifics about what that evidence would be or why it might be in the vehicle. *Id.* at ¶ 30. Finally, the warrant concludes that Mr. Zuberi met with AW1 in Merrill and evidence of DNA from AV1, AV2 or other victims may be in the Altima. *Id.* at ¶ 31. Nothing in the warrant describes how AV1 or AV2 left DNA in the vehicle.

During the search of the Altima, law enforcement discovered a receipt for AAA Discount Storage in Klamath Falls that contained an access code. *See* Affidavit for the Search Warrant for the Prowler Trailer, Defense Exhibit 4, at ¶ 25. According to law enforcement, Mr. Zuberi mentioned that same code to AW1 in a jail call. *Id.* at 31. The FBI reached out to AAA Discount Storage and learned there was a trailer at the storage location that they believed belonged to Mr.

Zuberi even though it was registered to someone else. *Id.* at ¶ 35. They then obtained a search warrant for the trailer and found additional evidence.

The defense now moves to suppress the search of the Altima and the subsequent search of the trailer.

## **ARGUMENT**

A warrant is supported by probable cause if "given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When reviewing a warrant, this Court should find that probable cause is not met when the issuing judge lacked a "'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39. (citation omitted).

When a warrant contains conclusions by the affiant that are not supported by facts, those conclusions cannot be used to establish probable cause. *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013). It is the facts themselves, not the affiant's conclusions, that the issuing judge must rely on to draw his own inferences and conclusions. *Id.* (citing cases). A few facts followed by multiple opinions is simply not enough; the mores inferences that must be drawn to conclude that evidence may be found in a location, the more difficult it is to establish probable cause. *Id.*

### *1. The Altima Was Improperly Seized*

Impounding a vehicle is a Fourth Amendment seizure. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). Such a seizure, thus, requires a warrant unless an exception applies. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir.2001). Klamath County Police seized the vehicle under the theory that it had been abandoned. It was not abandoned. Mr. Zuberi

obtained permission to leave the vehicle at the gas station until closing time (10:00pm) before leaving. There was no basis to impound the vehicle. That alone warrants suppression of any evidence found in the Altima.

### 2. *The Warrant for the Altima is Not Supported by Probable Cause*

But, even if the seizure was lawful, the subsequent search was not. The FBI obtained a search warrant for the Altima, which had been towed from the gas station parking lot by the Klamath Police Department, to look for evidence of kidnapping and obstruction. While the warrant contained a summary of the investigation into the allegations made by AV1 and AV2, it contained few facts related to the Altima itself or why that car would contain evidence of the crimes. It simply lists some evidence that still had not been found and said that it could be in the Altima.

Because the Altima was AW1's car, the warrant attempted to tie it to evidence of Mr. Zuberi's crimes. It opined that evidence of AW1's possible obstruction—because she lied to officers and was located in Reno—might be in the car. But no facts support that conclusion; lying to an officer does not mean that evidence that you obstructed justice will be found in your car. And the video from the scene actually leads to the opposite conclusion—if there was any evidence in the Altima, AW1 threw it away.

The warrant goes on to speculate that because Mr. Zuberi was in Merrill, Oregon, where the vehicle was located, and there were some items that law enforcement continued to search for, he could have transferred those missing items to the Altima. The affidavit states no facts in support of this speculation.

The claim that DNA of AV1 or AV2 might be found in the vehicle is even harder to comprehend. Neither AV1 nor AV2 claimed to have been in the Altima. Both described being in

an SUV. The warrant for the Honda Pilot contains the clear opinion of the affiant that the Pilot was the vehicle that was used in AV1's abduction, with facts to support that opinion. *See* Affidavit for the Search Warrant for the Honda Pilot, Defense Exhibit 5, at ¶ 17, 30.

At bottom, the warrant for the Altima is based on the theory that any location that Mr. Zuberi may have had access to might have evidence of a crime in it. This kind of general conclusion does not establish probable cause. The failure to establish any factual basis for concluding that the Altima would contain evidence of a crime dooms the warrant.

### 3. *The Evidence from the Trailer Must Be Also Suppressed*

Law enforcement discovered the existence of a storage facility that housed a trailer because of the search of the Altima. And that search of the Altima was conducted without probable cause. Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Because there was no probable cause for the initial search of the Altima, the subsequent search of the trailer must also be suppressed.

///

///

///

///

///

///

///

///

///

## <u>CONCLUSION</u>

This Court should find that the warrant for the Nissan Altima lacks probable cause and that any evidence from the Altima and the evidence derived from it should be suppressed.

DATED this 22nd day of April 2024.

Respectfully submitted,

ANGELI LAW GROUP LLC

_s/ Amy E. Potter_
Amy E. Potter

121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Attorney for Defendant*