**AMY E. POTTER**, OSB No. 231794
amy@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**MICHEAL BERTHOLF**, OSB No. 044642
michaelbertholaw@gmail.com
Law Offices of Michael P Bertholf LLLC
108 Mistletoe St
Medford, OR 97501
Telephone: (541) 245-9167
Facsimile: (541) 773-6790

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff. <br><br> v. <br><br> NEGASI ZUBERI, aka JUSTIN JOSHUA HYCHE, aka SAKIMA ZUBERI, <br><br> Defendant. | Case No. 1:23-cr-00254-MC <br><br> **MOTION FOR A *FRANKS* HEARING** |

Over the course of the investigation of this case, the government obtained multiple search warrants. And over time they had to correct information that was contained in prior warrants. These errors in the initial warrants cast doubt on the probable cause to search and entitle Mr. Zuberi to a

hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of those initial warrants.[1]

## BACKGROUND

This case began with an allegation of a kidnapping in Klamath Falls, Oregon. After AV1 identified the location where she alleged she was held, the Klamath Falls Police obtained a warrant for the home. *See* Affidavit for the Search Warrant for the residence on N. Eldorado (Klamath Falls PD), Defense Exhibit 1.[2] The FBI became involved around that time and when law enforcement decided a second warrant for the home was needed, the government obtained a federal search warrant. *See* Affidavit for the Second Search Warrant for the residence on N. Eldorado (FBI), Defense Exhibit 2.

Many more warrants followed. The government sought warrants for two vehicles and a trailer. *See* Affidavit for the Search Warrant for the Nissan Altima, Defense Exhibit 3; Affidavit for the Search Warrant for the Prowler Trailer, Defense Exhibit 4; Affidavit for the Search Warrant for the Honda Pilot, Defense Exhibit 5. As well as multiple warrants related to

---

[1] To the extent that the later, corrected warrants rely on information from the initial warrants, evidence seized pursuant to those later warrants is also subject to suppression. *Wong Sun v. United States*, 371 U.S. 471 (1963).

[2] One set of all the affidavits that the defense anticipates relying on are being filed with these pretrial motions.

electronic data and multiple seized devices. *See* Affidavit for the Search Warrant for Verizon, Defense Exhibit 6; Affidavit for the Search Warrant for Assorted Devices, Defense Exhibit 7.

With each warrant, there were variations. Until, eventually, the government explained that the statements of AV1 and AV2 were different than initially disclosed. Ex. 7. Based on these errors, the defense is seeking a *Franks* hearing.

## ARGUMENT

A hearing held under *Franks v. Delaware*, 438 U.S. 154 (1978) "determines 'the validity of the affidavit underlying a search warrant.'" *United States v. Norris*, 942 F.3d 902, 909 (9th Cir. 2019) (citation omitted). "To obtain a Franks hearing, a defendant must make a substantial preliminary showing that: (1) the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and (2) the false or misleading statement or omission was material, i.e., necessary to finding probable cause." *Id.* at 909-10; *see also Franks*, 438 U.S. at 155-56. The defendant "must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008).

In this case, the initial warrants contained false and misleading information. For some of the statements, the government attempted to correct the information in later warrants. For example, in the September 20, 2023, warrant for digital devices, the affiant acknowledges that he had received a May 11, 2023, report related to AV2, but he did not read it fully before submitting his affidavit. Ex. 7. at ¶ 25. That report included information that AV2 has borderline multiple personality disorders and that AV2 reported having consensual sex with Mr. Zuberi. *Id.* at 26-27, 31. None of that was included in the initial warrants.

In other instances, the inaccurate or misleading paragraphs simply disappeared. For example, in the September 20, 2023, warrant, the affiant also acknowledges that he inaccurately stated that AV1 saw a badge during the alleged kidnapping. Ex. 7 at n. 1. When he learned this was inaccurate, he simply stopped including that information. *Id.* And then later he included a footnote explaining the error.

Acknowledging errors in later warrants does not fix the problem with the initial warrants. Mr. Zuberi is entitled to a *Franks* hearing.

In support of this motion for a *Franks* hearing, the defense provides the following examples of statements in the warrants that are false or misleading:

1. **Klamath Police Warrant for the Home – July 16, 2024 (Ex. 1)**

| Paragraph | Content | Issue |
|---|---|---|
| | Recounts AV1's statement | Fails to include AV1's criminal history (*See* Ex. 7 at ¶ 9). |

2. **FBI Search Warrant for the Home – July 18, 2024 (Ex. 2)**

| Paragraph | Content | Issue |
|---|---|---|
| 7, 13 | States that AV1 said a police badge was shown and that AV1 observed body armor and police patches. | That was inaccurate. AV1 never said she saw a police badge or body armor. While the affiant later explains that he was briefed by law enforcement as to this information, the Klamath Falls Warrant (Ex. 1) made clear that AV1 stated she had |

| | | not seen the badge. This mistake is acknowledged in later warrants. (Ex. 7). |
|---|---|---|
| 16 | Discusses the presence of the id of a deceased person that was found by Klamath County in the home | Implies Mr. Zuberi might have been involved in the murder when there was no evidence of that. This paragraph is dropped from later warrants. |
| 17 | States that the taser, AV1's cell phone, clothes, a towel and other items had not been found | Fails to explain how this could still be in the home that has previously been searched. |
| | AV1's criminal history in not included | AV1's criminal history is provided in a later warrant. (Ex. 7 at ¶ 9) |
| | No details are provided about why there would be additional evidence at the home despite the initial search. | There is no basis for a second warrant. |

3. *Search Warrant for the Nissan Altima*

| Paragraph | Content | Issue |
|---|---|---|
| 7, 13 | Same issues with badge and body armor as FBI warrant for the home | Inaccurate statement |

| | | |
|---|---|---|
| 16 | States that the taser, AV1's cell phone, clothes, a towel and other items had not been found | Provides no explanation as to why those items would be in the Altima. |
| 18, 24 | States that AW1 said the car was hers and she used it. But later paragraph points out that AW1 lied to law enforcement | Implies that AW1's statement about the car is not believable. But law enforcement repeatedly recognized it as AW1's car. |
| 25 | States that vehicle was abandoned in Merrill, Oregon and that a crumpled-up receipt was on the floor | The Altima was not abandoned. |
| 26-28 | Describes AV2's allegations | Fails to disclose the multiple inconsistencies in AV2's report to law enforcement. While it states that she was place in small SUV (¶ 26), never clarifies that she was not transported in the Altima. |
| 29 | States that Mr. Zuberi was in Merrill for 45 minutes and could have transferred items to the Vehicle. | Fails to recount the description of the video that shows AW1 throwing stuff away and the fact that there is nothing showing Mr. Zuberi placed stuff in the vehicle. |
| 30 | States that evidence of AW1's attempts to assist Mr. Zuberi may be in the Altima | Offers no specifics about what that evidence would be. |
| 31 | Says that Mr. Zuberi met with AW1 in Merrill and evidence of DNA from AV1, AV2 or other victims may be in the Altima | There is nothing that indicates either AV1 or AV2 were in the vehicle or that there are other victims much less that DNA would be in the vehicle. |

|  | AV1's criminal history in not included | AV1's criminal history is provided in a later warrant. Ex. 7 at ¶ 9. |

### 4. Search Warrant for the Trailer (Ex. 4)

| Paragraph | Content | Issue |
| --- | --- | --- |
| 8, 14 | Same issues with badge and body armor as FBI warrant for the home | Inaccurate statement |
| 31 | Describes jail call and alleges Mr. Zuberi and AW1 were discussing the trailer code | This description omits the initial discussion in the call which was about a bank account. |
| 37 | General allegation that subjects "engaged in serial crimes" may store things in places other than their home | No basis for this statement. |
|  | AV1's criminal history in not included | AV1's criminal history is provided in a later warrant. Ex. 7 at ¶ 9. |

### 5. Search Warrant for the Honda Pilot (Ex. 5)

| Paragraph | Content | Issue |
| --- | --- | --- |
| 7, 13 | Same issues with badge and body armor as FBI warrant for the home | Inaccurate statement |

| 16 | Discusses Mr. Zuberi's journals which "describe his criminal intent" | Overstates the nature of the writings to create bias against Mr. Zuberi. |
|---|---|---|
| 23-27 | Describes AV2's allegations | Fails to disclose the multiple inconsistencies in AV2's report to law enforcement as well as her mental health issues. These are later disclosed in subsequent warrants. Ex. 7. |
| | AV1's criminal history in not included | AV1's criminal history is provided in a later warrant. Ex. 7 at ¶ 9. |

The initial warrants in this case contained multiple inaccuracies. And for many of those, simply reviewing a report or a prior warrant would have made the error clear. Failing to review key documents prior to submitting a warrant is reckless. To the extent there was time pressure, which may explain the first mistake, but it does not explain why it took months for the government to disclose the inaccuracies to the court. Mr. Zuberi has met both prongs of the first step of the *Franks* analysis. *See United States v. Bennett,* 219 F.3d 1117, 1124 (9th Cir. 2000)

Taken together, the inaccuracies materially affected probable cause. The basis for searching was often nothing more than the affiant's conclusion that there must be additional evidence somewhere. For example, accurately recounting what the alleged victims said and disclosing Mr. Zuberi's lack of significant access to the Altima was material to any probable cause determination for that vehicle. And failing to offer any explanation for why the house might contain additional evidence combined with the inaccuracies also casts doubt on that

warrant. There was simply not a fair probability that evidence would be found in the locations to be searched for many of the initial warrants. *Norris*, 942 F.3d at 910. Mr. Zuberi is entitled to a *Franks* hearing.

## CONCLUSION

This Court should grant a *Franks* hearing.

DATED this 22nd day of April 2024.

Respectfully submitted,

ANGELI LAW GROUP LLC

*s/ Amy E. Potter*
Amy E. Potter
amy@angelilaw.com
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

*Attorney for Defendant*