NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**JEFFREY S. SWEET, OSB #994183**
Jeff.Sweet@usdoj.gov
**NATHAN J. LICHVARCIK**
Nathan.j.Lichvarcik@usdoj.gov
**MARCO A. BOCCATO, OSB #103437**
Marco.Boccato@usdoj.gov
Assistant United States Attorneys
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 1:23-cr-00254-MC |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SEVER** |
| **NEGASI ISHAIAH ZUBERI, aka JUSTIN JOSHUA HYCHE,** | |
| **Defendant.** | |

The government does not oppose severing the escape charge (Count 8). But the remaining charges should remain joined for trial.

Defendant made a study of targeting, tracking, kidnapping, and assaulting women. He worked through the obstacles in his plans and refined them over time. With his arrest in July 2023, came the unraveling of a years-long, multi-state career of brutality, only a fraction of which this jury will hear, but it forms the structure around which he built the charged crimes.

AV1 and AV2's kidnappings are not isolated events, not from each other and not from Mr. Zuberi's evolving predation. Each woman holds direct evidence about the crimes against the

other in addition to evidence about Mr. Zuberi's motive, intent, preparation, plan, knowledge, absence of mistake—each and every permissible non-propensity purpose in Rule 404(b)'s litany. Fed. R. Evid. 404(b)(2).  Moreover, Mr. Zuberi's sexual assault of each of these two victims is admissible under Rule 413 in this joint case (as it would be admissible in each severed case) for the jury to "consider[] on any matter to which it is relevant."  Fed. R. Evid. 413(a).

Mr. Zuberi's gun and ammunition collections are also intertwined with his violence against these women.  He made a gun visible while kidnapping each of these victims, and AV1 managed to grab one in her escape.  Police found the guns or ammunition in locations with other evidence of Mr. Zuberi's crimes against these women, including handcuffs, a taser, the cinderblock cell, and victim DNA.

No procedural or evidentiary rule forces the government to rewrite a defendant's criminal arc into isolated segments when, in reality, he carried lessons learned from one crime into his next.

## A.    JOINDER

Rule 8 permits criminal counts to be charged and tried together if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).

The charged crimes capture only a snippet of Mr. Zuberi's plan.  Even casting prior crimes as preamble, what he did between Washington and Oregon just in 2023 is a chilling tale.

In that year, Mr. Zuberi collected tools.  He bought tasers, tire spikes, handcuffs, and leg irons.  He bought magnetic slap-on tracking devices and paid a monthly subscription for them. He obtained cellphone jammers and stole four guns.  He bought property in rural southern

Oregon where he planned on building a concrete "house" 100 feet underground. He asked a friend in construction for advice and drew up a rough plan.[1] And he asked for other advice about building, texting the same friend, "do you know what materials are used for prison and jail floors."



He hunted women. He made a July 2023 list titled "Targets," with names or social media handles and other identifiers. He fished the internet and took screenshots of available information—a picture of one woman, the work schedule of another. The government has evidence of Mr. Zuberi spending hours near that second target's workplace.



---

[1] He also sent his friend the GPS coordinates for the property where he would build it—the coordinates were for Mr. Zuberi's rural property in Bonanza, Oregon.

He also stalked women and girls, waiting in shopping malls and high school parking lots to identify and record them. Tracking them to their cars, he took down their license plates and sometimes followed them home to catalog where they lived. He used his tracking service subscription, renaming the default title to "Operation1", and taking a screenshot of the device's location (redacted image above).



He planned for capture. He wrote notes under the title "Operation Take Over," setting a goal to find someone with few people in their life to avoid "any type of investigation."



And he sought advice on how to build a block structure, asking that same friend:



 Then he stocked up on supplies. He bought pallets of cinderblocks, sound guard fiber, insulation panels, a security door and deadbolts, and made numerous trips to Home Depot, including the one shown here on May 17, 2023.

He vocalized his views on women. He wrote to the mother of his children that:



He proclaimed that this is his ideology and that he will stand by it and will die for it, and in doing so will die truly free.

This evidence is the reality in which Mr. Zuberi plotted and performed the kidnappings and rapes of AV1 and AV2. The government does not have to artificially unweave Mr. Zuberi's scheme, even if it does not show the jury every strand. *See Old Chief v. United States*, 519 U.S. 172, 189, 192 (1997) (with limited exception, "the prosecution is entitled to prove its case" without forced "break[s] in the natural sequence of narrative evidence"). The counts are properly joined.

**B. SEVERANCE**

"Even if joinder is permissible under Rule 8, a party who feels prejudiced by joinder may move to sever" under Rule 14. *United States v. Jawara*, 474 F.3d 565, 572 (9th Cir. 2007). The Court may sever counts if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a).

"[J]oinder is the rule rather than the exception." *United States v. Whitworth*, 856 F.2d 1268, 1277 (9th Cir. 1988). Rule 14 puts the burden on the moving party to show that keeping counts joined for a single trial will cause "manifest prejudice." *Jawara*, 474 F.3d. at 579. "The test is whether joiner is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976).

"Joinder is not prejudicial where all of the evidence of the separate count would [still] be admissible upon severance." *United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016) (quote omitted). And Rule 14 does not require severance even if there is prejudice, "rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993).

## C.    KIDNAPPING COUNTS—AV1 AND AV2[2]

Mr. Zuberi's two charged kidnappings are properly joined because they are of the same character and are connected as parts of a common scheme. They should remain joined because the evidence proving each crime is admissible—as direct evidence and under Rules 404(b) and 413—to prove the other. The standard jury instructions will adequately mitigate Mr. Zuberi's concerns about prejudice.

### 1.    Each woman's testimony provides direct, corroborative evidence of the other's and would be admissible even if the counts were severed.

A defendant's other uncharged bad acts fall outside of Rule 404(b)(1)'s general ban "where the evidence the government seeks to introduce is directly related to, or inextricably

---

[2] AV2's kidnapping happened two months before AV1's. The numbering is because the federal investigation began with AV1. This nomenclature is used throughout the discovery; to maintain consistency, the government will keep the naming as-is. The victims' names will be used at trial.

intertwined with, the crime charged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011). "A jury is entitled to the know the circumstances and background of a criminal charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (internal cite omitted).

In each charged kidnapping, Mr. Zuberi used many of the same or similar tools, tactics, and locations to commit his crime. That makes each victim a percipient witness to critical evidence of Mr. Zuberi's crime against the other. Both women will testify that they were inside Mr. Zuberi's Honda Pilot with him, that they saw him with a black and yellow taser, a gun, and handcuffs, and that he made them wear a backward-facing sweatshirt with the hood pulled over their face. Each will testify that he took their cellphone and wrapped it in foil and to their



observations of the garage of his Klamath Falls home. AV2 will testify to seeing cinderblocks piled in the garage. Mr. Zuberi took a photo of the pile.

AV1 will testify that two months later, Mr. Zuberi locked her in a cell in the garage, which law enforcement found was made of cinderblocks.

Each woman's ordeal is "so blended or connected" with the other's that it "explain[s] the circumstances surrounding, or tend[s] to prove [an] element of, the charged crime." *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002). Such "inextricably intertwined" evidence is admissible because it is "necessary to . . . permit the [government] to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Rrapi*, 175 F.3d 742, 748–49 (9th Cir. 1999) (quote omitted).

AV1 and AV2 provide eye-witness accounts of Mr. Zuberi's kidnapping methods and tools that is valuable direct evidence of both crimes. The probative value of their independently consistent observations has even more value because of the nature of the charges.

The victim's lack of consent is a fundamental element of kidnapping. *See* Ninth Cir. Model Crim. J. Instr. 17.1 (stating as second element that defendant held or detained the victim "against [their] will"). As is true in many sexual assault crimes, Mr. Zuberi isolated his victims, putting their credibility central to the case. Attacking the victim's credibility is a well-trod defense tactic in sex assault crimes of all kinds. As noted in the legislative history of Rule 413, this is a difference between these types of cases and almost every other kind of violent crime: "the accused mugger does not claim that the victim freely handed over [his] wallet as a gift—but the defendant in a rape case often contends that the victim engaged in consensual sex and then falsely accused him." *See* 23 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* Evid. R. 413 (2d ed.) (quoting from 140 Cong. Rec. H8991-92, Aug. 21, 1994).

The probative value of the two victims' corroborative testimony outweighs its potential prejudice under a basic Rule 403 balancing. Fed. R. Evid. 403. Victim credibility is heightened even more here because of the commercial sex overlay. AV1 was a commercial sex worker when Mr. Zuberi abducted and raped her. AV2 was not, but Mr. Zuberi made a point of stopping at an ATM and giving her $300 after he raped her. He said he wanted to pay for the damage he did to her face when he beat her, but in effect he turned the sexual assault into a commercial transaction over her objection.

The federal evidence rules recognize and attempt to correct for the special credibility issues caused by entrenched social stigmas around women's sexual activity. Rule 412 does that by severely limiting a defendant's ability to parade a victim's sexual history in front of the jury.

Rules 413, 414, and 415 do it by carving exceptions in sexual assault cases to Rule 404's propensity prohibition.

Even putting the specifics of those rules aside, the special concern for a sexual assault victim's credibility makes the probative value of evidence corroborating a victim's testimony greater than in other types of cases. *See United States v. Joubert*, 778 F.3d 247, 254 (1st Cir. 2015) (affirming probative value of a prior uncharged child molestation crime that corroborated current minor victim's testimony "particularly the nature of the abuse and Joubert's modus operandi").

Mr. Zuberi will need to try to discredit the victims and create innocent explanations for amassing the tools of his criminal trade—the taser, the pistol, the handcuffs, the leg irons, the cell phone jammers, the concrete cell—in order to launch any viable defense. That puts the victims' credibility at direct issue and gives their internal consistency high probative value. *See United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001) (noting heightened relevance of evidence supporting victims' credibility where the defendant "suggested they could be fabricating the accusations").

    **2.**  **The two kidnappings would be admissible under Rule 404(b) in severed trials.**

Even if the uncharged victim's testimony was evaluated under Rule 404(b) in severed cases, the outcome would be the same. Rule 404(b) allows evidence of a defendant's other crimes, wrongs, or acts if it is offered not to show he has a bad character, but as evidence of a material issue in the case. Fed. R. Evid. 404(b)(1)–(2). The rule lists examples—"such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Most of that list is at play here.

Identity is not likely in dispute. Mr. Zuberi committed these crimes using his own car and his own home, and he gave each victim an unfettered view of his face.

The more likely question to be put to the jury is what Mr. Zuberi intended when he got each of his victims into his car. Presumably, he will argue that these were two episodes of consensual, but maybe rough and maybe commercial, sex.

To decide if that's plausible, it will help the jury to hear how Mr. Zuberi advanced his procedure from what he did to AV2 in May 2023, to his crime against AV1 two months later. For example, he shackled both women. But he put handcuffs on AV2's wrists and ankles. She remembers him taking her from his garage into his house and up a flight of stairs. The short chain of the handcuffs made it hard for her to get up the steps. On May 15, 2023, less than two weeks after AV2's assault, a pair of leg irons was purchased on Mr. Zuberi's Amazon account. AV1 will testify that when Mr. Zuberi shackled her two months later, he handcuffed her wrists but put leg irons on her ankles.

The concrete cell is another example. Mr. Zuberi got the idea for it before he attacked AV2. He exchanged chat messages with a friend about materials and design, with his key question: "Would a person be able to destroy it. With their hands." He bought materials—the government has receipts, store surveillance video, and photo evidence. When he kidnapped AV2, he had cinderblocks piled in his garage but nothing yet built. He lamented to her that if he kept her, he didn't know where he would put her. He left her locked in his car in the garage for most of her twelve-hour imprisonment. He told her that it didn't matter if she screamed. In truth, he lived with the mother of his children, their two young kids, and there were other tenants in that house.

The government has evidence that after AV2, Mr. Zuberi bought panels of sound guard fiber, a light-and-sound barrier strip for the door and a double-cylinder deadbolt. By the time he captured AV1, the cell was built, and he locked her in it.

And Mr. Zuberi finally got an answer about the cell and human hands.



All of this shows Mr. Zuberi's preparation and planning, which, in turn, is evidence that his motive and intent in taking these women to his house was to capture and rape them.

Mr. Zuberi also suggested to each of these victims that he wanted to monetize them. To AV2, he said that he didn't know how much money she was going to make him, that he had other girls she would meet soon, and that he had two men coming over so he could "share" her, although the men never materialized. To AV1, he told her that she was too "valuable" to hurt and that doing so wouldn't be smart. These comments tend to show that Mr. Zuberi had the idea of using these women not only for his own sexual gratification, but also as sources of profit from commercial sex. All of this together shows knowledge, absence of mistake, and lack of accident; it rebuts any disclaimer he might try to float that he thought his victims were willing sexual partners.

On top of all of this, Rule 404(b) allows evidence about a defendant's other crimes to come in "to corroborate crucial prosecution testimony," so long as the corroboration is "direct and the matter corroborated is significant." *United States v. Pitts*, 6 F.3d 1366, 1370 (9th Cir. 1993). This can include corroboration of "the prosecution's only real witness" to the charged crime. *Id.* Here, the victims' testimony that Mr. Zuberi used violence, threats, and various

restraints to carry them to his house, and that he sexually assaulted them without their consent, is critical to the kidnapping charges. The alignment of their experiences is "directly corroborative" of the other's account. *Id.* at 1371.

For all of these reasons, AV2's kidnapping would be material in proving AV1's and vice versa. The two acts easily clear Rule 404(b)'s other admissibility requirements too. The rule permits other act evidence if: "(1) [it] tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) . . . the act is similar to the offense charged (similarity)." *United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020) (quote omitted). These two kidnappings were two months apart and shared many of the same features. As for sufficiency, while the consistency between the two victims' accounts is critical corroborating evidence, that is not all there is. The government seized the black and yellow taser, guns, cellphone jammers, and handcuffs from Mr. Zuberi's trailer; it found the cell, handcuffs, leg irons, and AV1's purse in Mr. Zuberi's garage; it recovered electronic evidence corroborating his possession of the pistol AV1 took from his car, and his location and travel at key times; and more.

The government has other Rule 404(b) evidence that it will seek to admit and will file a timely notice. But, for now, Rule 404(b)'s applicability to these two charged kidnappings discredits any purported need to sever the counts.

### 3.     Rule 413

The evidence of both of Mr. Zuberi's kidnappings would not only be admissible in severed trials as direct evidence and under Rule 404(b), but also under Rule 413. And unlike

with Rule 404(b), Rule 413 would allow the jury to consider an uncharged kidnapping and rape as propensity evidence.

"In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). "Sexual assault" includes crimes involving "contact, without consent, between the defendant's genitals or anus and any part of another person's body." Fed. R. Evid. 413(d)(3).

Mr. Zuberi is charged not only with kidnapping AV1, but also with transporting her across state lines "with intent that [she] engage in unlawful sexual activity." ECF No. 51 (Count 2); 18 U.S.C. § 2421. Mr. Zuberi transported AV1 from Washington to Oregon to rape her— which he did. AV1 will testify that he forced her to have oral and vaginal sex with him and that he attempted to have anal sex with her. *See United States v. Batton*, 602 F.3d 1191, 1197 (10th Cir. 2010) (holding that 18 U.S.C. § 2423(a) (transporting a minor with intent to engage in criminal sexual activity) is an "offense of sexual assault" for Rule 413 purposes).

Because Mr. Zuberi is charged with committing a sexual assault offense against AV1, Rule 413 would allow the jury in that severed case to hear about his capture and rape of AV2.

Rule 413 would open the same door in a severed case for AV2's kidnapping. Unlike the travel count, kidnapping does not have sexual assault as an element. But Rule 413 still applies because the evidence of Mr. Zuberi's kidnap and rape of AV2 is entirely intertwined.

Rule 413's focus "is on facts," not on the elements of a charge. *United States v. Foley*, 740 F.3d 1079, 1087 (7th Cir. 2014). Courts have refused to apply a "categorical approach" to Rule 413. *See id.* ("Foley points to no authority requiring courts to apply the categorical approach to Rule 413, nor does he offer any persuasive authority or policy reason why the rule

should be interpreted that way"); *see also United States v. Brooks*, 723 F. App'x. 671, 680–81 (11th Cir. 2018) (same for Rule 414). They have done so based, in part, on the policy rationale underlying Rule 413—"that a person who has engaged in the covered conduct is likely to engage in it again." *Foley*, 740 F.3d at 1087. Rule 413's application depends "on the conduct itself rather than how the charges have been drafted." *Id.*

An Iowa district court addressed a case very similar to this one and denied a severance motion because of the same Rule 413 issue. *United States v. Ahmed*, __F. Supp. 3d__, 2022 WL 782024 (N.D. Iowa Mar. 14, 2022). Mr. Ahmed was charged with two counts of federal kidnapping—he drove each of his victims to a deserted place and sexually assaulted them. The court held that the kidnapping charges qualified as sexual assault offenses for Rule 413 because "the offense conduct for the charged kidnappings necessarily involves evidence that Ahmed sexually assaulted the kidnapping victims." *Id.* at *14. In analyzing the issue, the court found support from federal courts across the country. *Id.* at *9-*14 (discussing cases); *see also United States v. Wager*, 651 F. Supp. 3d 594, 600–01 (N.D.N.Y. 2023) (also collecting cases in support); *cf. United States v. Green*, No. 8:06CR191, 2006 WL 3761989 (D. Neb. Dec. 20, 2006) ("Because there were also other objectives or motives, the nexus between the kidnapping offense and the offense of sexual assault, to which Rule 413 would apply, is too tenuous to support application of the rule.").

As in *Ahmed*, evidence of Mr. Zuberi's sexual attacks on his victims is woven into the facts of each kidnapping. "Although it is true that motive need not be proved under 18 U.S.C. § 1201, it is far from irrelevant. Motive is evidence of the commission of any crime." *United States v. Bradshaw*, 690 F.2d 704, 708 (9th Cir. 1982). Severance would not isolate his offenses,

the way that Mr. Zuberi seeks.  And revealing his motive will both rebut a defense argument that the victims were with him consensually and explain the otherwise inexplicable.

## D.    GUN AND AMMUNITION CHARGES

Mr. Zuberi also moves to sever Counts 4 through 7 from the other charges.  That motion should also be denied.  Not only did Mr. Zuberi use a gun in kidnapping both victims, but his firearms and ammunition were found alongside his kidnapping tools.  Mr. Zuberi did not segregate his crimes, and the Court need not either.

### 1.    Count Four: Springfield Pistol

Mr. Zuberi concedes that this count is properly joined with the kidnapping charge because he used this gun in kidnapping AV1.  She grabbed it and took it with her when she escaped.  The Springfield pistol is direct evidence of Mr. Zuberi's crimes against AV1.

But he asks that the Court bifurcate the felon element, so that the jury only hears about Mr. Zuberi's prior felony conviction after it has decided the kidnapping and transportation counts.  As the defense predicted, the government opposes this request because the prior conviction is admissible evidence under Rules 404(b) and 413.

Mr. Zuberi was convicted in 2021 of the felony of assault with a deadly weapon in Alameda County, California.  *State v. Zuberi*, No. 20-CR-013334.  He solicited commercial sex from a 16-year-old girl.  What followed was a violent rape and brutal beating, the graphic description of which is included in the government's sealed addendum.

This was a prior sex assault.  When additional facts are needed to show that a prior crime qualifies as a "sexual assault" under Rule 413, the Court applies Federal Rule of Evidence 104(b) to decide admissibility.  *See United States v. Norris*, 428 F.3d 907, 914 (9th Cir. 2005).  The Court does not need to make a determinative finding, it must "simply examine[] all the evidence

in the case and decide[] whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.* (quoting *Huddleston v. United States*, 485 U.S. 681, 690 (1988)). Here, the government will provide testimonial evidence of the sexual assault details, surpassing the preponderance standard.

Aside from Rule 413, defendant's prior California crime is also proper Rule 404(b) evidence. The crime is recent enough. It happened just a few years before this charged conduct. *See, e.g.*, *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989) (more than ten-year-old conviction not too remote); *see also United States v. Johnson*, 132 F.3d 1279, 1281 (9th Cir. 1997) (admitting 13-year-old prior). The conviction documents and witness testimony are sufficient to prove the relevant facts. *See United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (uncorroborated testimony of single witness satisfied Rule 404(b)'s sufficiency prong).

And it is material and similar because it echoes certain features of the charged crimes apart from just Mr. Zuberi's propensity for sexual violence. First is his targeting of sex workers. Both the California victim and AV1 were sex workers. AV2—who came in between them—was not. He tried just using pick-up lines outside of a bar to lure her into his car. It didn't go well. She remembers trying to rebuff him but not how she ended up in his car. Regardless of whether he succeeded in convincing her or accomplished it by force, it took effort. Mr. Zuberi reverted back to targeting another sex worker in AV1, likely for the ease of getting her alone and under his control at the start. There is other evidence that Mr. Zuberi strategized about best targets, as memorialized in his Operation Take Over note, which emphasized finding someone "without a bunch of ppl in their life" because "[y]ou don't want any type of investigation."

Second is Mr. Zuberi's use of his car. The entire encounter with the California victim— from the start of their commercial sex act through the rape and beating—took place in Mr.

Zuberi's car. This was a preplanned commercial sex act but he chose to do it in a car. Similarly, with AV2, even though he drove her back to his house, held her in his garage, and even marched her into his house for a time, he chose to rape her in his car. This may not be so unique or distinctive to qualify as a modus operandi, but it's idiosyncratic enough to make it probative.

Third, and much quirkier, is a particular sexual predilection that Mr. Zuberi told both his California victim and AV2 to perform. These details are in the sealed addendum too.

Altogether, these crossovers provide evidence useful to the jury in judging Mr. Zuberi's intent, motive, preparation, planning, and knowledge of his charged crimes. They also have corroborative value. And, of course, prejudicial effect, but that can be mitigated through instruction and through tailoring how the government presents its evidence. For example, depending on how Mr. Zuberi chooses to address this event, there may be no need to present graphic photo evidence of the injuries he inflicted on the California victim's face.

Those details can be decided closer to trial, but the general admissibility of the prior conviction is an issue the Court can decide now and use as a basis for denying Mr. Zuberi's request to bifurcate.

### 2. Counts Five through Seven

With Count Four joined, the argument to sever the rest of the § 922(g) counts becomes substantially weaker. Count Five charges Mr. Zuberi with possessing three other firearms—two rifles and a shotgun—along with 104 rounds of various types of ammunition, all recovered from a trailer that Mr. Zuberi kept away from his residence. Count Six charges him with possessing 430 ammunition rounds stored under his bed and Count Seven charges him with possessing another 363 ammunition rounds found in his garage.

All four guns—the pistol he used in kidnapping AV1, the rifles, and the shotgun—came from the same source. They belonged to Mr. Zuberi's former tenant in Vancouver, Washington. He evicted the tenant and kept the guns. That backstory is relevant evidence to prove his possession of the firearms.

It also reduces the prejudicial effect of the multiple guns. This was not a methodical amassing of an arsenal. It was, to some extent, a windfall. The guns in the trailer played no role in the kidnappings or other known crimes, other than felon in possession of a firearm, minimizing any prejudicial effect. There is, however, overlap between the kidnapping and transportation charges and his possession of the guns and ammunition.

There are significant efficiencies in including these counts with the other charges in a single trial. A number of witnesses would need to testify in both trials if the counts are split. As mentioned, the guns all came from the same source; that witness would need to testify twice. Mr. Zuberi's DNA is on all four of the firearms—and AV1's was also found on the pistol—that evidence would need to be repeated. As would the officers who searched Mr. Zuberi's trailer, his bedroom, and his garage because each of those places contained evidence of the kidnappings as well as the § 922(g) counts.

The guns and ammunition also provide attribution evidence that ties Mr. Zuberi to each of the locations where they were found and, in turn, to the co-located kidnapping evidence. There are four relevant locations that each contained evidence of the kidnappings:

| Honda Pilot<br>COUNT 4 | Prowler Trailer<br>COUNT 5 | Bedroom<br>COUNT 6 | Garage<br>COUNT 7 |
|---|---|---|---|
|  |  |  |  |
| • used to kidnap AV1 & AV2<br>• pistol<br>• AV1's cell phone<br>• handcuff key<br>• spent 9mm casing<br>• 9mm round<br>• receipts for Home Depot and trip to WA | • black/yellow taser<br>• handcuffs<br>• phone jammers<br>• semen-stained pants<br>• used condom (with Mr. Zuberi's & AV1's DNA) | • handcuff key<br>• key to cell's metal door<br>• "Operation Take Over" note<br>• drawing of underground room<br>• case matching gun AV1 took from Honda Pilot<br>• police patches<br>• body armor (w/ ammo) | • cinderblock cell<br>• handcuffs<br>• leg irons<br>• drill<br>• AV1's purse<br>• ammunition<br>• construction supplies |

The trailer, bedroom, and garage also held guns and/or ammunition. Count Five lists the trailer's evidence—three guns and eight different ammunition types. The pistol AV1 took from the Honda Pilot when she escaped (Count Four) was loaded with four different brands of 9mm ammunition—SIG, NovX, Hornady, Blazer. All four brands were also found in the trailer, along with a pistol holster and three 9mm magazines. Three other kinds of ammunition found in the trailer were found in Mr. Zuberi's bedroom—a fourth was found in the garage.

In the Honda Pilot, the FBI found a spent Hornady 9mm casing; the pistol had more of those rounds and this corroborates AV2's report that a hot round hit her leg when Mr. Zuberi fired the gun to threaten her. The FBI also found an unspent Remington 9mm round in the Pilot.

The ammunition charged in Count 6 was located in two ammunition cans in Mr. Zuberi's bedroom under his bed. One can had handcuff keys, a key to the cell, and various ammunition— two kinds of the ammunition were found in the garage, a third in the trailer. Another can

included boxes of different brands of shotgun shells that were missing two shells. Two matching shells were loaded in the shotgun found in his trailer.

Count Seven charges the hundreds of rounds of ammunition found on or under the garage workbench next to the cell. Matching ammunition from the workbench was found in the pistol, in the trailer, and under Mr. Zuberi's bed. The connections look something like this:



Photographs, video, receipts, testimony, and messages—including Mr. Zuberi telling friends and family about specific firearms he has along with pictures of some of them—tie him closely to the guns and ammunition.  This, in turn, connects him to the multiple locations with both evidence of his crimes *and* firearms and ammunition; the evidence is deeply intertwined and mutually supportive.

Those efficiencies weigh in favor of maintaining joinder.  Mr. Zuberi's argument that joining the § 922(g) counts with the kidnapping charges is just a veiled attempt "to make the jury think Mr. Zuberi is a dangerous and violent person" is hard to credit.  ECF No. 74 at 6.  What is most likely to make the jury think that Mr. Zuberi is a violent person is the testimony and other evidence of his brutal acts of violence against his victims, not the small cache of guns he stored behind the scenes.

### E.    CONCLUSION

For the reasons stated above, the Court should sever Count 8, but deny the defendant's motion on all other counts.

Dated: May 20, 2024

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ *Suzanne Miles*
SUZANNE MILES
Assistant United States Attorney