NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**JEFFREY S. SWEET, OSB #994183**
Jeff.Sweet@usdoj.gov
**NATHAN J. LICHVARCIK**
Nathan.j.Lichvarcik@usdoj.gov
**MARCO A. BOCCATO, OSB #103437**
Marco.Boccato@usdoj.gov
Assistant United States Attorneys
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 1:23-cr-00254-MC |
| v. | **GOVERNMENT'S MOTION IN LIMINE** |
| **NEGASI ISHAIAH ZUBERI, aka JUSTIN JOSHUA HYCHE,** | |
| **Defendant.** | |

For the reasons set forth below, the United States moves the Court *in limine* for an order precluding defendant Negasi Zuberi, his counsel, and any defense witnesses from asking any questions, introducing any evidence, or making any statements regarding the following matters:

1. Undisclosed Defense Exhibits

2. Specific-Instance Character Evidence

3. Exculpatory Hearsay

4. Impeachment Evidence

5. Sexual History of Victims and Witnesses

6. Medication and Medical History

Should Mr. Zuberi proceed *pro se*, the government will request to file a supplemental motion *in limine* to address additional matters. The government also moves *in limine* to admit impeachment evidence of defendant's felony conviction, should he testify.

## MOTIONS IN LIMINE

**1. Undisclosed Defense Exhibits**: This Court should preclude Mr. Zuberi, his counsel, and all defense witnesses from introducing any evidence, making any statements, or asking any questions regarding defense exhibits that have not been supplied to the United States prior to trial.

**2. Specific-Instance Character Evidence**: This Court should preclude Mr. Zuberi, his counsel, and all defense witnesses from introducing any evidence, making any statements, or asking any questions regarding any specific acts of Mr. Zuberi's prior good conduct. Testimony as to specific instances of good conduct is not admissible under Federal Rule of Evidence 405(a), because that rule permits only testimony about a person's reputation or testimony in the form of an opinion. *United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987); *Gov't of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985).

Federal Rule of Evidence 404(a)(2)(A) does not open a back door to testimony about specific acts of good conduct. That rule permits a criminal defendant to offer evidence of his own trait, and if it is admitted, the prosecutor may rebut it. Fed. R. Evid. 404(a)(2)(A). But the trait evidence must still take the form of reputation or opinion testimony, as permitted under

Rules 405(a) and 803(21). *Barry*, 814 F.2d at 1403. Thus, a character witness may not offer specific instances of conduct by Mr. Zuberi which would tend to support the reputation of Mr. Zuberi; rather, he may only summarize Mr. Zuberi's reputation in the community—after establishing competence on the subject. *See United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir. 1979) (holding that character witnesses must restrict their direct testimony to appraisals of defendant's reputation); *United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) ("[W]hile a defendant may show a character for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible."); *Michelson v. United States*, 335 U.S. 469, 477 (1948) (a character witness may only "summarize what he has heard in the community" about a defendant's reputation).

In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit has ruled that witness testimony about a defendant's character for "law abidingness" and honesty is permissible. *See United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992). Nevertheless, asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity is impermissible under Rule 404(a). *See id.* (finding it impermissible to ask character witnesses about a defendant's propensity to engage in large-scale drug dealing). Consequently, the United States moves in limine to prohibit Mr. Zuberi from introducing testimony or other evidence from any witness regarding any specific instances of Mr. Zuberi's conduct for the purpose of establishing reputation, opinion, or character trait.

**3. Exculpatory Hearsay**: This Court should preclude Mr. Zuberi, his counsel, and all defense witnesses from introducing his own statements through the testimony of any witness or through the defendant's writings. Such statements are impermissible hearsay.

A defendant's inculpatory statements, when offered by the government, are admissible statements of a party opponent. *See* Fed. R. Evid. 801(d)(2). This rule does not apply to evidence offered by Mr. Zuberi because he would be offering it for himself, not against a party opponent.

A defendant's exculpatory statements—or any statements—are inadmissible hearsay, even if made contemporaneously with other self-inculpatory statements. *See Williamson v. United States*, 512 U.S. 594, 599 (1994) (finding "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts"); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming district court decision to preclude defendant from "eliciting his own exculpatory statements, which were made within a broader, inculpatory narrative"). The United States may introduce defendant's inculpatory statements, but defendant may not introduce his own non-inculpatory ones, which are "inadmissible hearsay." *Ortega*, 203 F.3d at 682.

**4. Motion to Admit Impeachment Evidence**: In the event Mr. Zuberi testifies, the government will seek to impeach him with evidence of his prior felony conviction pursuant to Rule 609:

> Assault with a deadly weapon, in the Superior Court of California, County of Alameda, Case Number 20-CR-013334, on or about January 21, 2021

Under Fed. R. Evid. 609(a), evidence of a defendant's prior felony conviction is admissible if the court determines that its probative value outweighs its prejudicial effect. *United States v. Browne*, 829 F.2d 760, 762 (9th Cir. 1987) (footnote omitted). In making that determination, courts look to five factors: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the

past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. *Id*. at 762–63. *See also United States v. Bagley*, 772 F.2d 482, 487 (9th Cir. 1985); *United States v. Cook*, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979). Defendant is not entitled to a pretrial ruling on the admissibility of his prior conviction; this Court is not required to rule on this issue until it has heard defendant's testimony. *See Luce v. United States*, 469 U.S. 38, 43 (1984) ("to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify").

     **5. Sexual History of Victims and Witnesses**: Evidence regarding any sexual activity of AV1, AV2, or MV1, apart from Mr. Zuberi's attacks, has no role in this case and should be excluded from the jury. *See* Fed. R. Evid. 412

     A.     Federal Rule of Evidence 412

In all criminal cases involving allegations of sexual misconduct, Federal Rule of Evidence 412 prohibits evidence "offered to prove that a victim engaged in other sexual behavior; or . . . to prove a victim's sexual predisposition." Fed. R. Evid. 412(a). "The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process." *Id.*, Advisory Comm. Notes (1994).

     This federal rape-shield rule seeks to keep factfinders properly focused, but also to combat the historic problems of victim-shaming and victim-silencing. *Id.* "By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." *Id.*

     The rule keeps this evidence out in any form—whether used as substantive evidence or for impeachment—except in three specified circumstances: (1) to rebut that the defendant was

the source of physical evidence—semen, injury, etc.; (2) to prove consent, if that is a defense to the charged crime; and (3) to secure defendant's constitutional rights. Fed. R. Evid. 412(b).

Even if one of the exceptions applies, sexual history evidence may still be excluded for another evidentiary reason, such as under Rule 104's preliminary proof requirement or Rule 403's relevance test. Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."); Fed. R. Evid. 403 (requiring exclusion if probative value is outweighed by risk of unfair prejudice).

### B. Commercial Sex Work

AV1 and MV1 were commercial sex workers at the time that Mr. Zuberi assaulted them. It was in that capacity that he contacted each of them. That is a piece of Counts 1 and 2's overall narrative and it shows why Mr. Zuberi targeted AV1; it is also a point of similarity that makes his crime against MV1 admissible under Rule 404(b). The fact that Mr. Zuberi approached AV1 and MV1 in their capacity as commercial sex workers outweighs Rule 412's prejudice concerns. The jury will, and should, hear those facts.

But Mr. Zuberi should be prohibited from probing other details of their commercial sex work or of making propensity arguments to the jury. A defendant is entitled to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (9th Cir. 1986). Here, the most likely defense Mr. Zuberi will mount to his kidnapping charges is that his victims went with him willingly. But the courts have been firm that, "[t]he very purpose of [Rule 412] is to preclude defendants from arguing that because the victim previously consented to have sex—for love or money—her claims of coercion should not be believed." *United States*

*v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015). And they systematically reject attempts to costume sexual propensity evidence in constitutional clothing.

These rulings most often arise in sex trafficking cases involving victims who willingly engaged in prior commercial sex acts but were coerced to do so in the case at bar. For example, in *United States v. Haines*, 918 F.3d 694, 696 (9th Cir. 2019), the defendant argued that he did not traffic his minor victim, he was "merely along for the ride" as she engaged in commercial sex of her own accord. The court held that even that defense did not justify admission of evidence that the girl acted alone before. *Id.*

The rationale behind these cases applies equally here, particularly because both AV1 and MV1 voluntarily accompanied Mr. Zuberi as a putative customer and engaged in acts of commercial sex before Mr. Zuberi overpowered them. A Seventh Circuit case, *United States v. Carson*, 870 F.3d 584, 592–93 (7th Cir. 2017), may be the most factually apt. In his sex-trafficking-by-force case, Mr. Carson argued that he needed to tell the jury about his adult victims' prostitution histories to rebut the government's charge that he "knowingly" coerced them into sex trafficking with him because he "subjectively believed" that they acted "willingly." The court denied this "attempt[] to twist [classic propensity evidence] out of [its] usually forbidden realm" and tie it to an elemental defense. First, because the defendant did not offer any evidence that the women's other sex acts were actually voluntary or, even if they were, that he knew it. *Id.* at 594 ("[i]f anything, Carson must have known that whatever traits made these women easy targets for his coercion, would have made them easy targets for others as well"). Second, Mr. Carson's crimes involved acts of brutal violence and depravation. Even if his victims had willingly engaged in prostitution before, "[n]o rational person could witness" the

kind of force and coercion that defendant committed, "let alone inflict it himself, without knowing" its impact on the victims. *Id.*

So too here. To the extent that Mr. Zuberi tries to introduce historical evidence of either AV1 or MV1's commercial sex work in order to convince the jury that he believed either victim was seeing their "date" through, and that his conduct was somehow not criminal, the *Carson* case is instructive.

### C. Other Sexual History Evidence

The government is not aware of other specific sexual history evidence of AV1, AV2, or MV1 that the defense intends to elicit, but it asks generally that the Court enforce Rule 412's proscription, noting that the rule is broadly written. It defines "sexual behavior" to include not only "all activities that involve actual physical conduct, i.e., sexual intercourse and sexual contact" but also those that imply sexual activity, such as use of contraceptives, birth of a child, or diagnosis of a venereal disease. Fed. R. Evid. 412, Advisory Comm. Notes, Subdivision (a) (1994). The reference to "sexual predisposition" is designed to keep out things like the "victim's mode of dress, speech, or life-style," that might carry a sexual connotation or overtone for a juror. *Id.*

The government asks for a pretrial ruling prohibiting the defense from asking about any victim's "sexual behavior" (other than the specific commercial sex conduct discussed above) unless Mr. Zuberi makes a preliminary relevance showing outside of the jury's presence.

**6. Medication and Medical History**: Although there is no Rule 412 corollary addressing mental health evidence, there are some parallel concerns about the privacy and dignity of those who get unwittingly dragged into the Court's public forum. The government is aware of at least one witness with a diagnosed mental health history.

A. Confrontation Clause

Defendants have a Sixth Amendment right to confront witnesses against them. That right guarantees an opportunity for cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (2018). But that right is not unlimited. The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

B. Cross-examination should be limited to probing credibility and perception while maintaining the witness's privacy and dignity.

The defendant has a right to use cross-examination to "test the witness' perceptions and memory," as well as their biases or "motivation in testifying." *See Davis v. Alaska*, 415 U.S. 308, 316–17 (1974). But he may not use cross-examination as a means of making private medical information public when it serves no credibility purpose. Rule 403's basic protections don't allow it and the Confrontation Clause does not provide a backdoor.

In assessing the probative value of a witness's mental health evidence, "the court should consider such factors as the nature of the psychological problem, . . . the temporal recency or remoteness of the history . . . and whether the witness suffered from the problem at the time of the events to which she is to testify, so that it may have affected her ability to perceive or to recall events or to testify accurately." *United States v. Kohring*, 637 F.3d 895, 910–11 (9th Cir. 2011) (quoting *United States v. Sasso*, 59 F.3d 341, 347–48 (2d Cir. 1995)). "[F]ederal courts

appear to have found mental instability relevant to credibility only where, during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness . . . that dramatically impaired her ability to perceive and tell the truth." *Kohring*, 637 F.3d at 910 (quote omitted).

If the defense intends to question this witness about their mental health history, the government asks that the Court order Mr. Zuberi to proffer under seal to the Court (*in camera* if he requests) what aspects of that history he intends to probe. This will allow the Court to do the needed relevance assessment outside the jury's presence and off the public record.

Dated: June 28, 2024

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ *Suzanne Miles*
SUZANNE MILES
Assistant United States Attorney