IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,  )
                           )
    Plaintiff,             )
                           )
    v.                     )   No. 1:23-cr-00254-MC
                           )
NEGASI ZUBERI,             )
                           )
    Defendant.             )

Telephonic Status Hearing

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL J. McSHANE

CHIEF UNITED STATES DISTRICT COURT JUDGE

June 26, 2024

```
                                                                2

 1                              APPEARANCES

 2

 3    FOR THE PLAINTIFF:

 4            JEFFREY SWEET
              United States Attorney's Office
 5            405 E. Eighth Avenue
              Suite 2400
 6            Eugene, Oregon 97401

 7    FOR THE PLAINTIFF:

 8            NATHAN J. LICHVARCIK
              United States Attorney's Office
 9            405 E. Eighth Avenue
              Suite 2400
10            Eugene, Oregon 97401

11    FOR THE PLAINTIFF:

12            MARCO BOCCATO
              United States Attorney's Office
13            310 W. Sixth Street
              Medford, Oregon 97501

14

15    FOR THE PLAINTIFF:

16            SUZANNE A. MILES
              United States Attorney's Office
17            1000 S.W. Third Avenue
              Portland, Oregon 97204

18

19    FOR THE DEFENDANT:

20            AMY ELIZABETH POTTER
              Angeli Law Group LLC
21            121 S.W. Morrison Street
              Suite 400
22            Portland, Oregon 97204

23

24

25
```

```
 1   FOR THE DEFENDANT:
 2            MICHAEL BERTHOLF
              Law Offices of Michael P. Bertholf, LLC
 3            108 Mistletoe Street
              Medford, Oregon 97501
 4
 5   COURT REPORTER:   Lindsey A. Weresch, RMR, CRR, CSR
                       United States District Courthouse
 6                     1000 S.W. Third Avenue, Room 301
                       Portland, Oregon 97204
 7                     (503)326-8047
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1  (Wednesday, June 26, 2024, 3:19 p.m.)

2  P R O C E E D I N G S

3  (Whereupon, the following proceedings were held in
4  open court:)

5  THE COURTROOM DEPUTY CLERK: Now's the time set for
6  Criminal Case Number 23-254, the United States of America
7  versus Negasi Zuberi, for a status hearing.

8  THE COURT: All right. Who do I have representing
9  the Government?

10  MR. SWEET: Good afternoon, Your Honor. Jeff Sweet,
11  Nathan Lichvarcik, Suzanne Miles and Marco Boccato for the
12  United States.

13  THE COURT: All right. Thank you.

14  And for the defense.

15  MS. POTTER: Amy Potter and Michael Bertholf for the
16  defense. We're both by phone. And Mr. Zuberi is by phone as
17  well from the Jackson County Jail.

18  THE COURT: All right. Mr. Zuberi, can you hear us?

19  THE DEFENDANT: Barely.

20  THE COURT: All right. We'll try to speak up.

21  We do have a court reporter from Portland, so if
22  everybody could try to keep their voices up. I'm actually in
23  the courtroom. So let me turn it over first to the Government.

24  I did look at one e-mail, Mr. Sweet, that you sent
25  earlier today to Ms. Pew. You might need to walk me through

```
 1   some of it.  Some of it's cryptic.  Some of it I understand
 2   better.  I understand there might be some more information as
 3   well, but let me start with the Government.
 4           MR. SWEET:  Thank you, Your Honor.  Yes.  The
 5   Government's core concern is that Mr. Zuberi violated the
 6   protective order that was issued by this Court.  And on
 7   March -- March 13th, Your Honor, of 2024, this Court issued an
 8   amended protective order, which is ECF number 62.  And that
 9   specifically prevented Mr. Zuberi from disseminating or
10   disclosing, outside of the defense team, the names or
11   identifying information of AV1, AV2 or other individuals
12   identified in discovery as having been assaulted by Mr. Zuberi.
13           However, as the Court has seen -- and if I may,
14   Your Honor, just to confirm, is the e-mail that the Court
15   received -- did that include the protective order and -- that
16   Mr. Zuberi was attempting or had disclosed a name relating to
17   this case?
18           THE COURT:  Yes.  There's a protective order.  And it
19   involves, it looks like, phone conversations on June 24th at
20   11:17 a.m. to Ms. Westfall, and a phone conversation June 24th
21   at 11:23 to Ms. Westfall.
22           MR. SWEET:  Thank you, Your Honor.  Then I just
23   wanted to confirm which e-mail that was, and that's clear then.
24   Then, Your Honor, in that -- in that June 24th at 11:23 jail
25   call, Mr. Zuberi explicitly discloses the names -- the name of
```

1  one of the victims, a person he was convicted of assaulting.

2         He also attempted to disclose, and partially
3  disclosed, the name of one of the victims that is listed in one
4  of the kidnapping counts.  Your Honor, that is an explicit
5  violation of the protective order.  He listed one name and
6  listed part of another.  It's not a technical violation.  It's
7  a flagrant violation, because it's clear from other jail calls
8  that Mr. Zuberi's core purpose was to harass, embarrass,
9  exactly the kind of conduct that the protective order is
10 designed to protect the victims from.

11        And even after he was warned, Your Honor, by his
12 counsel, he continued.  And the second e-mail -- and I
13 apologize.  I apologize that that hasn't gone through,
14 Your Honor.  We must be having some technical difficulties.
15 But there were some additional calls that followed, Your Honor.

16        And Mr. Zuberi, even though he'd been warned about
17 disclosure, said, "Seriously make a video.  Use the names.
18 Expose these liars."  And, again, he's speaking with Ms. Alycia
19 Westfall, the mother of his children, throughout.  He's told
20 her that "They have no control over what you're doing, over
21 what you're saying.  You can say whatever you want."

22        He's encouraging her to make a video and to post it.
23 "You can expose -- I gave you the information.  You can expose
24 these prostitutes.  You don't have to know their faces.  You
25 know their names."  Your Honor, this is -- again, this goes --

1  this is diametrically opposed to what the Court ordered him not
2  to do.
3          And then in another call, Your Honor -- you know, and
4  some of these are lengthy.  This is -- this is fast-moving --
5  he told Ms. Westfall to, quote, "spell the damn names," end
6  quote, for the videos.  Your Honor, Mr. Zuberi's jail call
7  privileges to Ms. Westfall were then blocked.  And I must say,
8  Your Honor, from the calls Ms. Westfall sounds very
9  enthusiastic about participating in this and in getting names
10 out.
11         His jail call access to Ms. Westfall was blocked,
12 which is why the defense requested the hearing today, which
13 works well for the Government, frankly, because we were going
14 to be requesting a hearing on this as well.  After his jail
15 call privileges were blocked to Ms. Westfall, Your Honor, he
16 then called his mother today and had his mother do a three-way
17 call to Ms. Westfall.
18         THE DEFENDANT:  No, I didn't.  She just did it.  My
19 mom just did the three-way call.  I never asked her to.  I
20 never asked her to do it.
21         MS. POTTER:  Mr. Zuberi, please wait until it's your
22 turn.  This is your attorney.  Please do not jump in.  Thank
23 you.
24         MR. SWEET:  Your Honor, I have not listened to
25 today's call, and so Mr. Zuberi may well be correct that his

mother decided to do that. I understand there was concern expressed on the call about making a three-way call and whether that could result in his calls to his mother being blocked.

It is, in fact, a violation of jail policy to do so. Your Honor, I'm not saying that everything that Mr. Zuberi says on a call to Ms. Westfall is -- is inappropriate or improper. And I understand that in his call today he tried to walk things back. And in some earlier calls, he has tried to say, "Okay. Wait. Don't do that. Don't say that. We can't do this."

But then he, at the same time, makes statements like, "Make a video. Use the names. Expose these liars." So what the Government is asking, Your Honor, is we are asking that Mr. Zuberi's right to unsupervised access to Ms. Westfall be -- be curtailed, that he not be allowed to have -- that his jail call access continues to be blocked, his e-mails, his video calls and in-person visits and the same for letters.

We don't oppose them being supervised by defense counsel or defense investigator. We're happy to discuss details to work this out. I realize they share children. I realize she may be a witness for the defense, and they may have trial preparation needs. However, Your Honor, this -- this is an urgent situation.

We are very concerned that Ms. Westfall was going to take a video, make a video, post a video and take other actions that would cause embarrassment and shame and potential

1  harassment to the victims.

2  We believe the Court can do this under its inherent

3  authority and also as part of enforcing compliance with the

4  protective order that this Court issued.  I'm happy to answer

5  any questions the Court has.  But that's what we have at this

6  time, Your Honor.

7  THE COURT:  If you could perhaps expound on what you

8  mean by, I guess, supervised communications with Ms. Westfall.

9  I'm not sure -- are you -- maybe third-party contact through

10  the attorneys or letters written to her would be reviewed by

11  his attorneys before being forwarded?

12  MR. SWEET:  Yes, Your Honor.  That's certainly --

13  that's certainly one thing.  And the jail -- the jail obviously

14  will have its own procedures, in terms of copying outgoing

15  nonlegal mail and other steps that -- that they may take.  And,

16  you know, they have their own ability to determine violations

17  of -- of three-way calling and other things and the steps that

18  they may take.  But, yes, if a defense investigator or defense

19  counsel are on a call with Ms. Westfall, that would allay the

20  Government's concerns.

21  THE COURT:  Okay.  Let me hear from the defense.

22  THE DEFENDANT:  Hello?

23  MS. POTTER:  Thank you, Your Honor.  I believe --

24  just so the record is clear, Your Honor, I believe Mr. Zuberi

25  would like to speak to the Court directly.  At this point what

1  I would say, Your Honor, is he -- as the Government

2  acknowledges, he tried to walk back that information.

3          The blocking his calls to the mother of his children

4  also cuts off contact with his children, which is obviously a

5  very significant issue for Mr. Zuberi. We understand why the

6  Court would be concerned about these calls. And, again, he

7  tried to walk it back. So we're not aware of any video having

8  been made, and we're happy to answer any questions the Court

9  may have.

10         THE COURT: I don't. Does Mr. Zuberi wish to be

11 heard?

12         THE DEFENDANT: Yes. I -- when I was told there was

13 a protective order, I didn't know what a protective order means

14 inside of a jail. What do you -- I mean, I don't know how

15 you're protecting anyone. But -- and they didn't give me --

16 they didn't serve me something that said, "Oh, you can't do

17 this. You can't do that."

18         They didn't give me the details of this protective

19 order. I didn't know that you could not say the names of -- of

20 these witnesses. But I said them, and then my attorney

21 contacted me and said I could not say the names. So I didn't

22 say the names, so I just said to make a video and --

23         THE COURT: Mr. Zuberi, you're going to have to slow

24 down. We have a court reporter, and you're speaking very fast.

25         THE DEFENDANT: Okay. I didn't think that this would

```
 1  be a problem.  I -- I -- I didn't know that this was a
 2  violation of the protective order.  I thought they were
 3  protected.  I'm inside of a jail.  And -- and that I -- when I
 4  spoke to my mom today, I told -- she did a three-way call
 5  without my permission.
 6          I said, "I don't know if this could get you blocked,
 7  too."  So I kind of was just trying to get off the phone, but I
 8  can't control what everybody does on a phone call.  And she did
 9  that, and I told Alycia to not make any video.  I didn't walk
10  it back.  I told her directly, "Do not make any video because
11  they're saying it is illegal.  So don't make the video.  Don't
12  make any videos."  That's what I said.  And you'll hear it when
13  you listen to it.  And I -- I cannot go without being able to
14  talk to my family.
15          THE COURT:  Okay.  Well, you are in violation of the
16  protective order.  You have released to a third party the
17  identifying information about victims in this case.  And it's
18  clear that you are encouraging somebody to harass, if not
19  tamper with, the witnesses in this case.  I'm concerned greatly
20  about that.
21          I'm concerned that, especially in these kinds of
22  cases, you know, it is, I think, difficult for the Government
23  to protect witnesses to the point where they feel like they can
24  participate in the prosecution.  Anything that manipulates that
25  really puts the Government at a great disadvantage if they
```

cannot protect the people that they wish to protect, protect their names, their identifying information, their contact information.

I don't know what you're thinking when you're having these conversations. I don't know if, in fact, when you say you were backing it up, you really mean that. It's pretty clear that you and Ms. Westfall or --

THE DEFENDANT: I can't really hear. I can't hear. Sorry.

THE COURT: Yeah. I'm sorry, too. But we're in kind of a difficult situation, Mr. Zuberi, where you on the phone have been, quite frankly, frightening: Frightening to your attorneys, frightening to the alleged victims in this case. And I simply cannot allow it to continue. These are at-risk people who do not need you putting out their information to others, especially Ms. Westfall, who seems more than happy to do your bidding when it comes to creating videos, getting contact information about them and disseminating it to others.

So you are not to have any individual contact with Ms. Westfall. Your phone, e-mail and writing privileges to her will be blocked by the Jackson County Jail. If you need to have conversations with Ms. Westfall about your children, about the weather, about anything other than this case, it would be with -- in the presence of the -- somebody on the defense team.

They could certainly be at her residence on a

speakerphone listening to the conversation, making sure it's appropriate and not in violation of the Court's order. If there's mail that you wish to send her or she wishes to send you, it needs to be reviewed by the defense team so that it does not violate the protective order.

And that's true of e-mails as well. So there is to be no direct contact with Ms. Westfall unless a member of the defense team is supervising that contact to make sure that this is not a violation of the protective order or, quite frankly, a violation of the law in terms of tampering with witnesses.

So, for better or for worse, you seem to get on the phone and not understand that everybody is listening to what you're saying. And what you're saying is frightening. And it is the words of somebody who is sounding desperate, and desperate to lash out at these victims -- alleged victims of this crime.

So that has to stop, and this is the only way that I can trust it will stop. If I hear of any other phone calls to any third party with information such as what I'm seeing in these phone calls to Ms. Westfall, all phone access will be cut off except to your attorneys. So am I clear on that, Mr. Zuberi?

THE DEFENDANT: I understand.

THE COURT: Okay. Is there anything else we need to discuss from the Government?

```
 1             MR. SWEET:  No, Your Honor.
 2             THE DEFENDANT:  Yes, I would -- no, I need to -- I
 3   would like to set a hearing for my attorneys.
 4             THE COURT:  Well, you need to talk to your attorneys
 5   about setting a hearing.
 6             THE DEFENDANT:  I told --
 7             MS. POTTER:  Your Honor, I believe that we may need
 8   to set a hearing regarding the status of counsel, is what
 9   Mr. Zuberi is asking for.  And we're happy to reach out to
10   Ms. Pew.  There are some deadlines coming up, if we are no
11   longer going to be representing Mr. Zuberi, that may need to be
12   reset.  So I don't know what the Court's availability is.
13             THE COURT:  Well, I am in -- well, I'm not going to
14   drop everything again and -- and come down to Medford for yet
15   another hearing because Mr. Zuberi cannot seem to maintain a
16   relationship with counsel.  I am not planning on appointing new
17   counsel, given the preparedness and the amount of work
18   that's -- current counsel has been putting in, unless I hear
19   something dramatically different.
20             If, again, Mr. Zuberi is thinking he wants to
21   represent himself, I will send down the Faretta forms for him
22   to review.  But we can set the matter via video or when I'm
23   next in Medford, which would be in August.
24             MR. BERTHOLF:  We will discuss that with Mr. Zuberi
25   and let the Court know if the deal will work for Mr. Zuberi.
```

```
1          THE COURT:  Okay.  Anything from the Government on
2   that issue?
3          MR. SWEET:  No, Your Honor.  Thank you.
4          THE COURT:  All right.  Thank you, folks.  We'll be
5   in recess.
6                            * * *
7          (Court adjourned, 6-26-24 at 3:36 p.m.)
```

|   |   |
|---|---|
| 1 | C E R T I F I C A T E |
| 2 | United States of America v. Negasi Zuberi |
| 3 | Case No. 1:23-cr-00254-MC |
| 4 | Telephonic Status Hearing |
| 5 | June 26, 2024 |
| 6 | I certify, by signing below, that the foregoing is a |
| 7 | true and correct transcript, to the best of my ability, of |
| 8 | the telephonic proceedings heard via conference call, taken |
| 9 | by stenographic means.  Due to the telephonic connection, |
| 10 | parties appearing via speakerphone or cell phone or wearing |
| 11 | masks due to coronavirus, speakers overlapping when |
| 12 | speaking, speakers not identifying themselves before they |
| 13 | speak, fast speakers, the speaker's failure to enunciate, |
| 14 | and/or other technical difficulties that occur during |
| 15 | telephonic proceedings, this certification is limited by the |
| 16 | above-mentioned reasons and any technological difficulties |
| 17 | of such proceedings occurring over the speakerphone at the |
| 18 | United States District Court of Oregon in the above-entitled |
| 19 | cause. |
| 20 | A transcript without an original signature, conformed |
| 21 | signature, or digitally signed signature is not certified. |
| 22 | |
| 23 | /s/Lindsey A. Weresch, RMR, CRR, CSR |
| 24 | Official Court Reporter         Signature Date: 7/5/2024 |
| 25 | Oregon CSR No. 14-0427          CSR Expiration Date: 6/30/2026 |