NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**JEFFREY S. SWEET, OSB #994183**
Jeff.Sweet@usdoj.gov
**NATHAN J. LICHVARCIK**
Nathan.j.Lichvarcik@usdoj.gov
**MARCO A. BOCCATO, OSB #103437**
Marco.Boccato@usdoj.gov
Assistant United States Attorneys
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 1:23-cr-00254-MC |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE FROM ARREST IN RENO AND OBJECTIONS TO VIDEOS FROM ARREST** |
| **NEGASI ISHAIAH ZUBERI, aka JUSTIN JOSHUA HYCHE,** | |
| Defendant. | |

Just hours after AV1 escaped Negasi Zuberi's cell, he fled his house, stashed evidence in his trailer, fled to California, searched online for flights from Reno to New York and Turkey, and then fled to Reno with his family. When Reno police found him in his car, he refused to exit for over an hour, made suicidal statements, cut himself with a knife, threw his phone on the ground and said, "I'm fucked". The government does not offer this evidence—including that he had his son with him in the car during the standoff—to show that Mr. Zuberi is a bad person, just a guilty one. The totality of his conduct and statements are inculpatory and inconsistent with a

**Government's Response to Defendant's Motion in Limine re: Reno**        **Page 1**

person who engaged in a consensual sexual encounter. Or of a person who only had a music studio in their garage.

## Pertinent Facts

In the early evening hours of July 16, 2023, Reno law enforcement located Mr. Zuberi in a Walmart parking lot. He was in his Honda Pilot with one of his sons; Alycia Westfall and his other son were outside of the car and in the area. At 5:46 p.m., law enforcement pulled in behind Mr. Zuberi and ordered him out of the vehicle. Despite repeated requests, he refused to exit and the standoff ensued.

While he was holed up in his car, Mr. Zuberi was in near constant communication with law enforcement and Ms. Westfall via telephone or video. Most of these conversations were captured by officers' body camera videos. Though the audio quality varies, what is clear is Mr. Zuberi's desperation, suicidal statements, his fixation on hearing what the detective from Oregon said, and his belief that his life was effectively over.

When an officer told Mr. Zuberi that he had some information from the detective in Oregon, Mr. Zuberi responded, "The information is I'm fucked." The officer said he was not "fucked", but Mr. Zuberi repeated, "I'm fucked", and soon after declared, "I can't even kill myself right."

Other inculpatory statements by Mr. Zuberi include:

- If I get out this car I'm really finished
- I might as well just get shot right here
- I'm about to go to jail
- Do you understand if I walk out of this car my life is completely over?

- I think the best way is for me just to die

During the standoff, Mr. Zuberi cut himself with a knife and stuck his bleeding lower leg out of the car window. After a little over an hour, he finally agreed to surrender. But prior to doing so, he stood outside holding his son, removed his phone case, and threw his phone to the ground.

Once in the ambulance, Mr. Zuberi continued to make inculpatory statements. He expressed incredulity that he was being arrested on a California probation violation, and said—with a bewildered expression—"What about the other shit?" He explored this further with disbelief, and then asked law enforcement if their camera was on.

Mr. Zuberi proclaimed to be surprised by the kidnapping accusation and denied knowing what it was about. When asked why he was in Reno, he said he was going on a vacation, and he made half-hearted statements that he was thinking about going on a cruise. Both in the ambulance and during the standoff, Mr. Zuberi was notably interested in how law enforcement located him, and he guessed that they tracked his phone.

### Government's Reno Video Exhibits

Law enforcement videos span a nearly five-hour period, from the start of the traffic stop through Mr. Zuberi's time in the hospital. The government now seeks to offer approximately 20 minutes of video, almost all of which is objected to by the defense, except as noted below. The exhibits and times to be played follow below, and the government will provide the Court and defense with versions of the exhibits which include just the relevant portions.

<u>Exhibit 180</u>: 00:20-1:03 (No defense objection)

<u>Exhibit 181</u>: 00:15-1:50

4:50-9:55

11:58-12:03 (No defense objection)

**Government's Response to Defendant's Motion in Limine re: Reno**     **Page 3**

Exhibit 182:   31:30-33:28

   41:19-42:29   (No defense objection to 41:19-42:05)

   43:18-49:10

Exhibit 183:   5:05-6:41

   6:54-7:17

   8:25-9:45

   10:36-12:29

**Discussion**

Mr. Zuberi took frenzied steps to flee and hide evidence. His hurried flight from his house left a wealth of evidence behind, with more to be found in the trailer and then in his Honda Pilot. Though he bought bleach cleaner and paper towels after he fled, he could not clean the stain of the evidence of his crimes—not the blood in the cell or on the fence, not his DNA on the taser or handcuffs, and not the handcuff key or receipts in the Honda Pilot. His inculpatory statements cannot be unraveled from his desperate acts—his cutting himself with a knife and keeping his son in the vehicle are because he knew he was caught and had left behind a wealth of evidence. Mr. Zuberi's acts, statements and his consciousness of guilt are all intertwined.

Evidence of flight is relevant to show consciousness of guilt. *United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999). "Flight evidence is probative of a defendant's guilt if four inferences are justified: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Id.* (internal citations omitted). Here, the first inference is present

because Zuberi began his flight and attempted cover-up mere hours after AV1 escaped. The remaining inferences can be drawn from the fact he was aware law enforcement was actively investigating and at his residence. Zuberi's false statements about planning to go on a cruise also show consciousness of guilt. *United States v. Perkins*, 937 F.2d 1397, 1402 (9th Cir. 1991) ("Perkins's false exculpatory statements therefore properly could be considered as evidence of consciousness of guilt.").

This was not a planned vacation, nor a family trip, but a flight to evade capture. The fact that Mr. Zuberi took his entire family with him is directly probative of his consciousness of guilt. And separately, Alycia Westfall's presence and complicity in the escape goes both to her credibility regarding her statements to law enforcement and as a potential witness at trial.

Mr. Zuberi's incriminating statements and bizarre behavior in Reno are the final act in his frantic attempt to avoid being caught. When he learned that AV1 had escaped he rushed to cover his tracks, hide evidence, and to flee. And once his arrest was imminent, he engaged in a prolonged stand-off—refusing to exit, refusing to let his son exit, making suicidal statements and cutting himself. These actions, combined with his statements that he was "fucked", finished, and going to jail show consciousness of guilt. His statements and actions are relevant and admissible.

\\\

\\\

\\\

\\\

\\\

\\\

## CONCLUSION

The Court should deny defendant's motion in limine to exclude evidence from his arrest in Reno.

Dated: August 18, 2024

                                                 Respectfully submitted,

                                                 NATALIE K. WIGHT
                                                 United States Attorney

                                                 s/ *Jeffrey S. Sweet*
                                                 JEFFREY S. SWEET
                                                 NATHAN J. LICHVARCIK
                                                 MARCO A. BOCCATO
                                                 Assistant United States Attorneys